## THE VANDAL.[1]

### THE W. A. LEVERING.

### MILLIKEN et al. v. THE VANDAL.

### STANTON v. THE W. A. LEVERING.

(District Court, S. D. New York. January 18, 1894.)

COLLISION—STEAM TUG AND SAIL—CLOSE APPROACH—CAUTION.

A steam tug which attempts a close approach to a sailing vessel for the purpose of collecting her towage bill is bound to approach with care and skill, and with due regard to the motion of the sailing vessel; and a tug which, under such circumstances, failed to approach a yacht parallel with the latter's course, and delayed reducing her speed, by reason of which collision ensued, was *held* liable for the damage.

In Admiralty. Cross libels for collision. Decree for libelant, and dismissing cross libel.

Wilcox, Adams & Green, for The Vandal.
Edwin G. Davis, for The Levering.

BROWN, District Judge. At about 7 P. M. on May 30, 1892, the tug Levering, having towed the steam yacht Vandal from City Island to the junction of the East and North rivers, while endeavoring to collect her towage bill, by approaching the yacht near enough to receive payment in a package from the end of a pole, came in collision with the port side of the yacht, which was struck by the tug's bow, and each vessel sustained some damage, for which the above libel, and cross libel, were filed.

Some comments have been made in regard to the efforts at a settlement without trial. These efforts, I am entirely satisfied, were made in good faith on each side. They call for no other observations than the commendation of the court, and the assurance that such efforts can always be made without the least prejudice in this court to either side upon the merits, should such endeavors prove unsuccessful.

The mode of collecting payment at the end of the towage service, adopted in this case, is a very common one, though attended with some risk, through the near approach of the boats. Both, however, evidently concurred in this method; and the case, therefore, is not to be judged by the ordinary rules of navigation. The tug was bound, in approaching within a pole's length of the tow, to approach with care and skill, so as to avoid any injurious contacts. Upon her first approach, the tug missed, by keeping too far away; whereupon she dropped astern a second time. In coming up again on the port side of the yacht, her stem came in contact with the yacht amidships.

For the tug it is contended, that the yacht, at the moment of her approach, took a sheer to port, thereby causing her port side to come across the tug's bow. The wind was light, and the yacht moved very slowly through the water. A couple of the yacht's

[1] Reported by E. G. Benedict, Esq., of the New York bar.

planks were broken, and the stem of the tug was split. This indicates a blow of some severity; something more, at least, than a slight contact. As it is very difficult, if not impossible, to keep a light boat on a straight course with an aft wind, more especially if there are no head sails drawing, it is almost certain that there was some yawing of the yacht. But this was to be looked for to some extent, and guarded against.

Upon the whole evidence, I am satisfied, that considering the slow motion of the yacht, such yawing could not account for the damage done to either, had the tug approached in the ordinary way, that is, nearly parallel with the yacht, and reduced her speed properly before coming close to the yacht. I am persuaded that the accident arose from too much delay in reducing the tug's speed, and too large an angle of approach; and not from any luff by the yacht through the handling of her rudder. The luff to the southward, spoken of by the witnesses, was doubtless just after the collision.

Decree for the libelant, in the first suit, and dismissal of the cross libel, with an order of reference to compute the libelant's damages, if not agreed upon.